IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

|  |  |
|---|---|
| EMPLOYERS INSURANCE COMPANY OF WAUSAU, <br><br> Plaintiff, <br><br> v. <br><br> DAN WALKER ASSOCIATES, INCORPORATED, et al., <br><br> Defendants. | ) ) ) ) ) ) ) ) No. 22-cv-2530 ) ) ) ) ) ) |

**ORDER GRANTING TIMBER STEEL, LLC'S MOTION TO DISMISS
A&T BUILDERS, LLC'S THIRD-PARTY COMPLAINT FOR
FAILURE TO STATE A CLAIM**

Before the Court is Timber Steel, LLC's ("Timber Steel") Motion to Dismiss for Failure to State a Claim, filed July 3, 2023. (ECF No. 114.) Timber Steel seeks dismissal of Defendant A&T Builders, LLC's, ("A&T") June 6, 2023 Third-Party Complaint. (ECF No. 108.) A&T filed a response in opposition to Timber Steel's Motion on July 31, 2023, and Timber Steel replied to the response on August 14, 2023. (ECF No. 117, 122.) For the following reasons, the Motion to Dismiss is GRANTED.

I. **Background**

This suit arises from the partial collapse of a building in Memphis, Tennessee ("the Property"). (ECF No. 1 at 4-5.)[1] Some

---

[1] The facts in this Order are from the Third-Party Complaint and are found only for purposes of deciding the Motion to Dismiss.

time in 2018, a portion of the roof of a one-story, concrete and steel frame commercial structure collapsed during inclement weather. (Id. at 4.) The owner at the time engaged contractor Dan Walker Associates, Inc. ("Dan Walker") to repair the damage. (Id.) Dan Walker, in turn, hired a number of subcontractors to provide materials, engineering and design services, and other needed support. (Id. at 4-5.) The work was completed in April 2020. (Id. at 4.)

On February 28, 2021, the roof again partially collapsed due to the weather. (Id. at 5.) The collapsed portion was the same part of the roof that had been repaired. (Id.) Plaintiff Employers Insurance Company of Wausau, acting as subrogee for its insured, brought this suit against Dan Walker, A&T, and other parties engaged in the repair work. (Id. at 1-3.) Plaintiff brought claims for breach of express warranty, negligence, negligence per se, and professional negligence. (Id. at 6-18.) Dan Walker, in turn, brought crossclaims against A&T under theories of express contractual indemnity, implied indemnity, and contribution. (ECF No. 12 at 27-30.) On October 31, 2022, the Court issued an order dismissing Timber Steel as a defendant, pursuant to Plaintiff's Notice of Voluntary Dismissal. (ECF No. 34.)

A&T answered Plaintiff's complaint and Dan Walker's crossclaims on December 14, 2022. (ECF Nos. 48, 49.) On

2

February 16, 2023, A&T moved to amend its pleadings to file various crossclaims and counterclaims. (ECF No. 76.) It also moved to file a third-party claim against Timber Steel. (Id.) The Court granted A&T's motion in part and denied it in part. (ECF No. 112.) As relevant here, it granted A&T's request to file a third-party indemnity complaint against Timber Steel. (Id. at 15.) The Court issued that order on June 27, 2023. However, A&T had already filed its Third-Party Complaint against Timber Steel on June 6, 2023. (ECF No. 108.)

In its Third-Party Complaint, brought pursuant to Fed. R. Civ. P. 14(a), A&T alleges that Dan Walker served as the general contractor to repair the Property. (Id. at 3, ¶ 9.) Dan Walker retained A&T to repair the Property's steel components, and the Property owner retained Stability Engineering, LLC ("Stability") to provide structural engineering design services. (Id. at 3-4, ¶¶ 10-11.) A&T, in turn, retained Timber Steel to "detail, fabricate, and/or manufacture the steel materials and/or components" pursuant to Stability's designs, "including but not limited to the columns, rafters, beams, clips, plates, splices, washers, bolts and nuts." (Id. at 4, ¶¶ 14.) A&T alleges that the Property collapse was caused by "faulty, flawed, or defective steel materials or components" that Timber Steel made. (Id. at 4-5, ¶¶ 18-19.)

A&T alleges a single count of indemnification against Timber Steel, asserting that Timber Steel "negligently detailed, fabricated and/or manufactured the steel materials and components," causing the building collapse that is the subject of this suit. (Id. at 7, ¶ 31.) A&T asserts that Timber Steel's materials "weakened the structural integrity of the subject property's [sic] causing excessive deflection of a supporting beam that resulted in lateral movement." (Id. at 7, ¶ 28.) A&T maintains that Timber Steel breached its non-delegable duty to exercise reasonable care in manufacturing the parts at issue and to make sure that its work was performed "without flaws, defect or errors, and in a good and workmanlike manner." (Id. at 8, ¶¶ 34-35.) A&T argues that, if it is found liable to any party in the instant suit, Timber Steel is liable to A&T. (Id. at 8, ¶ 33.)

Timber Steel now moves to dismiss A&T's Third-Party Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). (ECF No. 114.) Timber Steel argues that A&T has failed to allege facts demonstrating an express or an implied indemnification contract between the two parties and that A&T's indemnification claim fails. (ECF No. 114-1 at 2.)

On July 31, 2023, A&T filed a response to Timber Steel's motion, arguing that it had pled facts sufficient to give Timber Steel notice that it sought to raise an indemnity claim under

Federal Rule of Civil Procedure 8(a). (ECF No. 117 at 3.) A&T concedes that it did not have an express indemnification contract with Timber Steel, but argues that it is entitled to indemnification based on its contract for Timber Steel's services. (Id. at 4-5.) A&T argues that Timber Steel breached its contract with A&T and engaged in tortious conduct in performing the contract. (Id. at 5.) A&T argues that the contractual relationship imposed an implied indemnity obligation. (Id.)

Timber Steel replied to A&T's response on August 14, 2023. (ECF No. 22.)

**II. Jurisdiction and Choice of Law**

The Court has diversity jurisdiction under 28 U.S.C. § 1332 because there is complete diversity among the parties. A corporation is a citizen of its state of incorporation and the state in which it has its principal place of business. Roberts v. Mars Petcare US, Inc., 874 F.3d 953, 956 (6th Cir. 2017). "A limited liability company . . . has the citizenship of its members and sub-members." Akno 1010 Mkt. St. St. Louis Mo. LLC v. Pourtaghi, 43 F.4th 624, 626 (6th Cir. 2022). Plaintiff is a corporation organized under the laws of Wisconsin and with its principal place of business in Massachusetts. (ECF No. 1 at 1.) Defendant Dan Walker is incorporated and has its principal place of business in Tennessee. (Id. at 2.)

5

Defendants A&T, Stability, and Geotechnology, LLC ("Geotechnology") are limited liability companies. (ECF Nos. 97-99.) Based on the disclosures of the parties, A&T is a citizen of Arkansas, Stability of North Carolina and Georgia, and Geotechnology of Delaware and Florida. (ECF Nos. 96-99.) Pierre Coiron, an individual defendant, is a citizen of North Carolina. (ECF No. 1 at 3.) There is complete diversity between Plaintiff and Defendants. Because Plaintiff seeks $1.6 million in damages, the amount-in-controversy threshold is also satisfied. (ECF No. 1 at 19.) The Court has diversity jurisdiction.

The Court also has or would have jurisdiction over existing counterclaims and crossclaims and those proposed to be added. 28 U.S.C. § 1367; see also Cowley v. Equifax Info. Servs., LLC, No. 2:18-cv-02846, 2019 U.S. Dist. LEXIS 181601, at *3-4, *9 (W.D. Tenn. Oct. 21, 2019) (exercising supplemental jurisdiction over counterclaim); Butler v. Rigsby, No. 96-2453, 1997 U.S. Dist. LEXIS 16375, at *3 (E.D. La. Oct. 16, 1997) ("It is well established that supplemental jurisdiction extends to cross-claims properly asserted under Rule 13(g) of the Federal Rules of Civil Procedure.").

State substantive law applies to state law claims brought in federal court. Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938). Where, as here, there is no dispute that a certain

6

state's substantive law applies, the Court will not conduct a choice of law analysis sua sponte. See GBJ Corp. v. E. Ohio Paving Co., 139 F.3d 1080, 1085 (6th Cir. 1998). Although whether a party may amend its pleading in federal court is a procedural matter governed by federal law, the parties agree in their respective motions and memoranda that, where state law is relevant, the law of Tennessee applies. (ECF No. 79 at 1-2; No. 81-1 at 5-7; No. 89 at 3.) The Court will apply Tennessee substantive law.

## III.     Standard of Review

Federal Rule of Civil Procedure 14 provides that a "defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it." The proposed third-party plaintiff must "obtain the court's leave if it files the third-party complaint more than 14 days after serving its original answer." Fed. R. Civ. P. 14(a).

Under Rule 12(b)(6), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A motion to dismiss permits "a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." Mayer v. Mylod, 988 F.2d 635, 638 (6th Cir. 1993). A motion to dismiss tests only whether the plaintiff has

7

pled a cognizable claim and allows the court to dismiss meritless cases that would waste judicial resources and result in unnecessary discovery. See Brown v. City of Memphis, 440 F. Supp. 2d 868, 872 (W.D. Tenn. 2006).

"To survive a motion to dismiss, the plaintiff must allege facts that, if accepted as true, are sufficient to state a claim to relief that is plausible on its face." Cooper Butt ex rel. Q.T.R. v. Barr, 954 F.3d 901, 904 (6th Cir. 2020) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007)). A claim is plausible on its face if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556). "[The] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." Twombly, 550 U.S. at 544. The court considers the plaintiff's complaint in the light most favorable to the plaintiff. Ryan v. Blackwell, 979 F.3d 519, 525 (6th Cir. 2020) (citing Ziegler v. IBP Hog Mkt., Inc., 249 F.3d 509, 512 (6th Cir. 2001)). The court accepts as true all factual allegations, but does not accept legal conclusions or unwarranted facts. Theile v. Michigan, 891 F.3d 240, 243 (6th Cir. 2018).

**IV. Analysis**

Under Tennessee law, "[i]ndemnity obligations are either express or implied." Winter v. Smith, 914 S.W.2d 527, 541 (Tenn. Ct. App. 1995). "Express indemnity obligations arise from the contracts between the parties, and implied indemnity obligations, whether called equitable or contractual, are imposed by law without the consent or agreement of the parties." Id. at 541-42. Indemnity may be implied by the relationship between parties. See Stiver Mktg., Inc. v. Performance Bus. Forms, Inc., No. 01-A-01-9108-CH-00276, 1991 Tenn. App. LEXIS 930, at *8 (Tenn. Ct. App. 1991) (stating principal may have indemnity from agent for whose acts principal has been held liable); Wharton Transp. Co. v. Bridges, 606 S.W.2d 521, 528 (Tenn. 1980) (holding that employers held liable for employee's acts through respondeat superior may recover in indemnity from employee).

Implied indemnity may be imposed "when the obligation [to indemnify] is a necessary element of the parties' relationship." Winter, 914 S.W.2d at 541. It may, for example, be based on a contractual relationship in which the contract does not include an indemnification clause, but contains an implicit right of indemnification. Time & Sec. Mgmt., Inc. v. Pittway Corp., 422 F.Supp.2d 907, 914 (W.D. Tenn. 2006) (collecting Tennessee cases). Even if the contract between the parties does not

9

address indemnification, "an obligation may be imposed where the party from whom indemnity is sought breached a contract or engaged in tortious conduct in performance of contract obligations." Id.

Alternately, under traditional Tennessee law, implied indemnity may be imposed "when justice and fairness demand that the burden of paying for the loss be shifted to the party whose fault or responsibility is qualitatively different from the other parties." Winter, 914 S.W.2d at 542. That has sometimes been referred to as "common law indemnity" or "implied-in-law indemnity." CMH Mfg., Inc. v. US GreenFiber, LLC, No. 3:12-273, 2013 WL 3324292, at *6 (E.D. Tenn. July 1, 2013).

A&T does not assert that it had an indemnification contract with Timber Steel. (See generally ECF No. 108.)  It can only prevail under a theory of implied indemnity. Winter, 914 S.W.2d at 541.  A&T does not say whether indemnification should be implied as a necessary element of the parties' legal relationship, or under broad principles of justice and fairness. Id. at 541-42.  A&T's indemnity claim survives, however, so long as the Third-Party Complaint contains facts sufficient "to sustain a recovery on any legal theory, even though it may not be the theory suggested . . . by the pleader." Leach v. Taylor, 124 S.W.3d 87, 92 (Tenn. 2004) (emphasis, internal quotation marks omitted) (explaining that complaints in tort actions

10

should be read "with a generous eye"); see also Scheid v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 436 (6th Cir. 1988) (holding that a "complaint must contain either direct or inferential allegations . . . to sustain a recovery under *some* viable legal theory"). As long as the Third-Party Complaint contains sufficient facts which, taken together and drawing all inferences in favor of A&T as the non-movant, states a claim under some recognized theory of indemnity, Timber Steel's motion must be denied.

A&T alleged that it "retained" Timber Steel to "detail, fabricate and/or manufacture the materials and/or components required and called for in the Stability design" plans. (ECF No. 108 at 4, ¶ 14.) In its original complaint -- which A&T incorporated into its Third-Party Complaint in its entirety -- Plaintiff Employers Insurance Company of Wausau alleged that A&T "retained Timber Steel to perform as a steel erection contractor." (Id. at 6, ¶ 24; ECF No. 108-1 at 4, ¶ 17.) Thus, although Timber Steel argues that A&T failed to plead the existence of a contractual relationship sufficiently, A&T's allegations are sufficient to infer there was a contract between A&T and Timber Steel. (ECF No. 122 at 3-4); see Ryan, 979 F.3d at 525 (explaining that, in resolving a motion to dismiss, the court must consider the complaint in the light most favorable to the plaintiff).

11

Nonetheless, the right to indemnity is not implied in every contractual relationship. Striver Mktg., 1991 WL 254564, at *4; Time & Sec. Mgmt., 422 F.Supp.2d at 914 (stating that an indemnity obligation "*may* be imposed" based on a breach of contract) (emphasis added). A&T has failed to allege facts showing any "unique special factors indicating the parties' intent that the party from whom indemnity is sought be ultimately liable," or otherwise describe why the "conduct of the parties or . . . nature of their relationship" warrants the imposition of indemnity. Striver Mktg., 1991 WL 25464 at *4. A&T does not, for example, provide a factual basis for believing Timber Steel's materials were defective or explain why Timber Steel should be liable for any alleged defects. The speculative allegation that Timber Steel is responsible for A&T's conduct is, without more, a bare legal conclusion that does not suffice to state a claim under Rule 12(b)(6). Twombly, 550 U.S. at 544 (holding that a "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions").[2] A&T has failed to show that indemnification was

---

[2] A&T argues that Fed. R. Civ. Proc. 8(a) requires only that it "alleg[e] sufficient facts to give Timber Steel notice that A&T seeks indemnification." (ECF No. 117 at 3.) That understates Plaintiff's burden at the pleading stage. Although a complaint "does not need detailed factual allegations," it must contain specific factual allegations to "give the defendant fair notice of what the . . . claim is *and the grounds upon which it rests*." Twombly, 550 U.S. at 555 (internal quotation

12

a necessary part of its contractual relationship with Timber Steel, although the contract itself was silent on indemnification.

A&T has also failed to plead facts showing that it has any other legal relationship with Timber Steel -- such as a principal/agent relationship or an employer/employee relationship -- that confers an indemnity obligation. Striver Mktg., 1991 WL 254564, at *3; Wharton Transp. Co., 6060 S.W.2d at 528. At least one court has held that buyers and sellers -- such as A&T and Timber Steel -- do not have a legal relationship that implies an indemnity obligation. First Nat. Bank of Chi. v. Cumberland Bend Invs, L.P., No. M2000-00001-COA-R3-CV, 2002 WL 31835693, at *3 (Tenn. Ct. App. Dec. 19, 2002). A&T does not argue to the contrary.

A&T's case is not comparable to those where courts have imposed indemnity based on principles of justice and fairness.[3]

---

marks, citations omitted) (emphasis added). Plaintiff is required to allege specific facts rather than mere "labels and conclusions." Id.

[3] Federal district courts differ about whether Tennessee law still recognizes claims for indemnity based on justice and fairness following the Tennessee Supreme Court's decision in Owens v. Truckstops of America, 915 S.W.2d 420, 430 (Tenn. 1996). See, e.g. CMH Mfg., Inc., 2013 WL 3324292, at *7; Siegel-Robert, Inc. v. United Inventory Servs., Inc., No. 07-1206, 2008 U.S. Dist. LEXIS 128990, at *7 (W.D. Tenn. Oct. 14, 2008); but see AutoZone v. Glidden Co., 737 F.Supp.2d 936, 945 (W.D. Tenn. 2010). The Court need not decide the effect of Owens on indemnification claims based on justice and fairness

In cases where a third-party plaintiff has successfully stated a claim for implied indemnification, that party has pled specific facts showing that the indemnitee's conduct "resulted in . . . the lawsuits which [the third-party plaintiff] was forced to defend." Pullman Standard, Inc. v. Abex Corp., 693 S.W.2d 336, 339 (Tenn. 1985). In Pullman Standard, for example, Pullman Standard, Inc. was sued after a railroad car that it manufactured was involved in a train derailment. 693 S.W.2d at 337. Pullman sought indemnification from Abex Corporation, the manufacturer and designer of the wheels on the Pullman railroad cars. Id. Pullman alleged that after the derailment, a federal investigation "drew the conclusion that the cause of the initial derailment and train wreck was the failure of a wheel" manufactured by Abex. Id. Pullman also alleged that Abex knew that its wheel "fracture[d] and fail[ed] under normal railroad operating procedures," but "nevertheless deceived" Pullman about the wheel's effectiveness. Id. at 340. The Supreme Court of Tennessee found these allegations sufficient to state an indemnification claim. A&T's allegations are far from this level of specificity.

In AutoZone, AutoZone, Inc. contracted with The Glidden Company ("Akzo Nobel") to purchase exterior paints for its new

---

because, for the reasons described below, A&T has failed to allege facts that would state an indemnification claim on that basis.

stores, specifying that the paint should be purchased from BASF Construction Chemicals, LLC ("BASF"). 737 F.Supp.2d at 940. When the paint began cracking, peeling, and fading, AutoZone sued Akzo Nobel for breach of contract. Id. Akzo Nobel sought indemnification from BASF on the basis that BASF provided defective products and was responsible for any damages that Akzo Nobel owed AutoZone. Id. at 944. The court found that Akzo Nobel had stated an indemnification claim because similar problems developed with the paint at different stores in different climates, suggesting that the problems "arose from defects in the paint products rather than their application." Id. at 944 n.1. That permitted the court to infer that "justice and fairness may demand that BASF indemnify Akzo Nobel for any liability Akzo Nobel incurs based on BASF's wrongdoing because of their qualitatively different degrees of fault." Id. at 945. Unlike Akzo Nobel, A&T has pled no facts permitting the Court to infer that justice and fairness require Timber Steel to indemnify A&T.[4]

---

[4] Akzo Nobel sought to amend its complaint to add an indemnity claim against BASF after discovery had begun, and used discovery to support its indemnification claim. AutoZone, 737 F.Supp.2d at 942. A&T has not had the benefit of discovery here. Although this distinguishes AutoZone from the instant case in some respects, it does not absolve A&T of its obligation to plead sufficient factual matter to raise its right to relief above a speculative level.

15

Although A&T's Third-Party Complaint repeatedly describes Timber Steel as negligent, those allegations are insufficient to state an indemnification claim. (See, e.g., ECF No. 108 at 7, ¶ 31; 8, ¶ 33; 9, ¶¶ 36-37.) In the past, Tennessee courts have imposed indemnification obligations when the indemnitor, through "active" negligence, creates a hazardous condition or causes an injury, and the indemnitee is liable only for "passive" negligence, i.e., the "mere failure to remedy or discover the negligence." Barrett v. Red Food Stores, Inc., No. 01-A-01-9108-CV-00302, 1992 WL 33891, at *6 (Tenn. Ct. App. Feb. 26, 1992).

However, indemnification based on the active-passive distinction has been abolished by the Tennessee Supreme Court. In Owens, that court noted that it had previously adopted a comparative fault system in which, when multiple tortfeasors cause a single injury, liability is several and not joint. 915 S.W.2d at 430. Because "each tortfeasor will be liable only for that proportion of the damages attributable to its fault," there would be no need for one tortfeasor to indemnify another. Id. at 430, 433-34. The court held that "there can be no claim for indemnification based on active-passive negligence because that distinction is subsumed into the doctrine of comparative fault." Id. at 434. A&T cannot plead facts establishing an

16

indemnification claim based on Timber Steel's alleged negligence.

A&T will have a full opportunity, should this matter proceed to trial, to show that it was not negligent or that part or all of any liability should be apportioned to other actors. See Owens, 915 S.W.2d at 434. Under Tennessee law, A&T would not be liable for any damages apportioned to others. Id. at 430.

A&T's conclusory allegations that any damages it owes Plaintiff are attributable to Timber Steel do not state an indemnification claim under any legal theory. They do not "raise [the] right to relief above the speculative level." Twombly, 550 U.S. at 555. Timber Steel's Motion to Dismiss is GRANTED. Having decided that A&T has failed to state an indemnification claim under Rule 12(b)(6), the Court need not reach the Rule 14 issues raised by the parties. (ECF No. 114-1 at 8-9; 117 at 5-9).

## V. Conclusion

Timber Steel's Motion to Dismiss (ECF No. 114) is GRANTED. A&T's Third-Party Complaint (ECF No. 108) is DISMISSED.

So ordered this 15th day of February, 2024.

*/s/ Samuel H. Mays, Jr.*
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE